Jack LEIGH, Plaintiff-Appellant,

v.

WARNER BROTHERS, INC., Defendant-Appellee.

No. 99-10087.

United States Court of Appeals,

Eleventh Circuit.

May 25, 2000.

Appeal from the United States District Court for the Southern District of Georgia.(No. 97-00340-CV-4), John F. Nangle, Judge.

Before DUBINA, Circuit Judge, KRAVITCH, Senior Circuit Judge, and NESBITT*, Senior District Judge.

KRAVITCH, Senior Circuit Judge:

This appeal concerns the scope of a photographer's copyright and trademark rights in his work, the role of the court in determining whether images are "substantially similar" for purposes of copyright, and the power of the court to rule on dispositive motions without first allowing broad discovery. Jack Leigh took the now-famous photograph of the Bird Girl statue in Savannah's Bonaventure Cemetery that appears on the cover of the best-selling novel *Midnight in the Garden of Good and Evil.* Warner Brothers made a film version of the novel and used images of the Bird Girl both in promotional materials and in the movie itself. Leigh sued Warner Brothers, asserting that it infringed his copyright and trademark rights in the Bird Girl photograph. *See* 17 U.S.C. §§ 101-1101 (1999) (copyright); 15 U.S.C. §§ 1051-1127 (1999) (trademark).[1] The district court granted summary judgment for Warner Brothers on all claims, except one that the parties now have settled, and Leigh appeals.

The district court correctly ascertained the elements of Leigh's photograph protected by copyright and determined that the Warner Brothers film sequences are not substantially similar to those protected

---

*Honorable Lenore C. Nesbitt, Senior U.S. District Judge for the Southern District of Florida, sitting by designation.

[1]Although amended over the decades, the trademark laws are still commonly known as the Lanham Act, and this opinion will at times refer to Leigh's "Lanham Act claims."

elements. Copyright infringement is generally a question of fact for the jury to decide, however, and the court erred in holding as a matter of law that no reasonable jury could find that the Warner Brothers promotional single-frame images were substantially similar to the aspects of Leigh's work protected by copyright.

As for Leigh's Lanham Act claims, the evidence that Leigh used the Bird Girl photograph to identify the source of his other work prior to the Warner Brothers movie is insufficient to establish the photograph as a trademark. We therefore affirm the district court's grant of summary judgment to Warner Brothers on Leigh's trademark claims.

Finally, Leigh contends that the district court abused its discretion by granting summary judgment without first allowing more discovery.[2] Additional discovery, however, would not help prove Leigh's use of his photograph as a trademark, and it could not overcome the substantial *dis*similarity between Leigh's photograph and the film sequences. Additional discovery could well be appropriate on remand for Leigh's remaining copyright claim.

## I. Background

In 1993, Random House commissioned Jack Leigh to take a photograph for the cover of *Midnight in the Garden of Good and Evil* ("*Midnight* "), a novel by John Berendt. After reading a manuscript of the novel, Leigh explored appropriate settings in Savannah and ultimately selected a photograph of a sculpture in the Bonaventure Cemetery known as the Bird Girl. Sylvia Shaw Judson had sculpted the Bird Girl in 1938, and she produced three copies of the statue. The Trosdal family had purchased one of the statues and placed it in their plot at Bonaventure Cemetery. The novel does not mention the Bird Girl statue. Leigh granted Random House permission to use the photo, but retained ownership and registered his claim of copyright.

---

[2]Leigh raises one additional issue on appeal. He claims that the court erred in finding that the jury's determination of a licensing fee as damages for the unlicensed use of a photograph would take into account whether the defendant provided a credit line for the photographer. Leigh's argument is without merit, and needs no further discussion. *See* 11th Cir. R. 36-1.

In 1997, Warner Brothers produced a movie based on *Midnight* and decided to use the Bird Girl statue on promotional materials and at the beginning and end of the movie. Because the Trosdals had removed the statue from their cemetery plot after the book's publication, Warner Brothers made a replica of the Bird Girl with the permission of Sylvia Shaw Judson's heir. The company then took photographs and film footage of the replica in a new location in Bonaventure Cemetery. Those images are the subject of this lawsuit.

Three segments of film footage depict the Bird Girl statue. One is a promotional clip, and the others appear at the beginning and end of the Warner Brothers movie. Six still images feature the Bird Girl: a promotional photograph and nearly identical picture on the "goodandevil" web site, a movie poster, a newspaper advertisement, the cover for the movie's soundtrack, and an internet icon. Leigh alleges that these images infringed his copyright and trademark rights in his Bird Girl photograph. The district court granted Warner Brothers' motion to stay all discovery, and later granted summary judgment for Warner Brothers on all claims except a copyright claim pertaining to the internet icon. The parties subsequently settled all claims pertaining to that internet icon.

We review the district court's grant of summary judgment *de novo,* construing all evidence in the light most favorable to the non-moving party. *See Beal v. Paramount Pictures Corp.,* 20 F.3d 454, 458-59 (11th Cir.1994). Summary judgment is only proper when there are no genuine issues of material fact. *See id.* We review the court's decision to rule on the summary judgment motion without allowing the plaintiff to complete desired discovery for abuse of discretion. *See Carmical v. Bell Helicopter Textron Inc.,* 117 F.3d 490, 493 (11th Cir.1997).

## II. Leigh's Copyright Claims

To establish a claim of copyright infringement, a plaintiff must prove, first, that he owns a valid copyright in a work and, second, that the defendant copied original elements of that work. *See Feist Publications, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361, 111 S.Ct. 1282, 1296, 113 L.Ed.2d 358 (1991).

3

The plaintiff can prove copying either directly or indirectly, by establishing that the defendant had access, and produced something "substantially similar," to the copyrighted work. *See Original Appalachian Artworks, Inc. v. Toy Loft, Inc.,* 684 F.2d 821, 829 (11th Cir.1982). Substantial similarity, in this sense, "exists where an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." *Id.* (internal quotation omitted).

"Substantial similarity" also is important in a second, more focused way. No matter how the copying is proved, the plaintiff also must establish specifically that the allegedly infringing work is substantially similar to the plaintiff's work *with regard to its protected elements. See Herzog v. Castle Rock Entertainment,* 193 F.3d 1241, 1248, 1257 (11th Cir.1999) (per curiam, adopting the district court opinion in its entirety); *Beal,* 20 F.3d at 459 & n. 4; William F. Patry, *Latman's The Copyright Law* 193 & n. 18, 196-97 (6th Ed.1986). Even in the rare case of a plaintiff with direct evidence that a defendant attempted to appropriate his original expression, there is no infringement unless the defendant succeeded to a meaningful degree. *See Fisher-Price, Inc. v. Well-Made Toy Mfg. Corp.,* 25 F.3d 119, 122-23 (2d Cir.1994).

For the purposes of its motion for summary judgment and this appeal, Warner Brothers does not contest Leigh's ownership of a valid copyright in the Bird Girl photograph. Leigh, on the other hand, takes issue both with the district court's view of the scope of his copyright and with the court's analysis of the similarities between the Bird Girl images.

Leigh's copyright does not cover the appearance of the statue itself or of Bonaventure Cemetery, for Leigh has no rights in the statue or its setting. *See Franklin Mint Corp. v. National Wildlife Art Exch., Inc.,* 575 F.2d 62, 65 (3d Cir.1978) (artists have no copyright in the "reality of [their] subject matter"); 4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 13:03[B][2][b] (1999) (noting that appearance of objects in the public domain or as they occur in nature is not protected by copyright). Nor does the copyright protect the association of the statue with the *Midnight* story. Leigh may have been the first to think of the statue as evocative of the novel's mood and as an appropriate symbol of the book's themes, but copyright law

4

protects only original expression, not ideas. *See* 17 U.S.C. § 102(a)-(b); *Feist,* 499 U.S. at 345, 111 S.Ct. at 1287 (citation omitted); *Herzog,* 193 F.3d at 1248 (citation omitted).

Thus, the district court correctly identified the elements of artistic craft protected by Leigh's copyright as the selection of lighting, shading, timing, angle, and film. *See Rogers v. Koons,* 960 F.2d 301, 307 (2d Cir.1992). Leigh suggests that the court also should have considered the overall combination of these protected elements as well as the mood they convey. The court determined that the "eerie," "spiritual" mood was *scènes à faire,* expression commonly associated with the subject matter (cemeteries) and thus non-original and unprotectable. *See Beal,* 20 F.3d at 459-60 (describing the *scènes à faire* doctrine). Leigh contests the notion that cemeteries are typically portrayed in an eerie, spiritual manner, but there is no need to determine whether *scènes à faire* applies in this case.

Analyzing relatively amorphous characteristics of the picture as a whole (such as the "mood" or "combination of elements") creates a danger of unwittingly extending copyright protection to unoriginal aspects of the work. *See* 4 Nimmer & Nimmer, *supra,* § 13:03[A][1][c] (criticizing the use of "amorphous referent[s]" such as the "feel" of a work in copyright analysis because it threatens to erode the line between what is and is not protectable). This danger is especially acute in a case such as this, in which the unprotected elements of the plaintiff's work—the haunting pose and expression of the Bird Girl and the cemetery setting—are so significant.

Although some cases have evaluated the "mood" of a work independently, *see, e.g., Beal,* 20 F.3d at 461-62, in this case it is safest to focus on the more concrete elements of the photographer's craft. Even as Leigh describes it, the mood is not so much an independent aspect of his photograph protected by copyright, as the effect created by the lighting, shading, timing, angle, and film. The same holds true for the overall combination of elements in the photograph. As long as the analysis is not overly detached and technical, it can adequately address both the effect of the protected, original elements of Leigh's photograph on the viewer and the contribution of those elements to the work as a whole.

5

In its order granting summary judgment, the court methodically and accurately details a number of differences in the compositional elements between Leigh's photograph and the Warner Brothers images. This circuit has noted, however, that lists of similarities between works are inherently subjective and unreliable, *see Beal,* 20 F.3d at 460, and the same can be true of lists of distinguishing characteristics.

The court was correct to hold as a matter of law that the film sequences featuring the Bird Girl statue are not substantially similar to the protected elements of Leigh's photograph.[3] In one sequence, the cemetery is shrouded in fog, revealing only the Bird Girl and a Celtic cross, a decoration absent from Leigh's photograph. The camera frame also crops the head of the Bird Girl statue. A second sequence is shot at least partly in color and in broad daylight. The statue's plinth is never shown, and as the camera pans up it shows only the upper portions of the statue on the left side of the screen. In the final sequence, the camera rotates around the statue, beginning with a side shot, and captures only the head and shoulders before panning back to show the Bird Girl's torso. Again, the statue is on the left side of the screen and the sequence is shot in daylight. The film sequences were not shot in the same section of the Bonaventure Cemetery as Leigh's photograph, so the surrounding gravestones and greenery are different. These film sequences have nothing substantial in common with Leigh's photograph except the statue itself.

The same cannot be said for Warner Brothers' photographic images.[4] There are, undeniably, significant differences between the pictures. The statue is smaller and more distant in most of the Warner Brothers pictures than in Leigh's photograph, and as a result the vegetation and headstones in the foreground are more prominent. The Bird Girl is approximately the same size only on the soundtrack cover. Although both the Leigh photograph and the soundtrack cover have diffuse light that "glows" about the statue, the lighting contrast is more extreme in most of the Warner Brothers pictures, with beams of light piercing the

---

[3]*See* Order app. 8 (R5, Tab 54) (the film sequences are found in appendix eight of the court's order granting summary judgment).

[4]*See* Order apps. 2-6 (R5, Tab 54) (appendices two through six of the court order granting summary judgment contain the single-frame Warner Brothers images).

6

tree canopy like spotlights. The shafts of light and surrounding shadows obscure details of the statue and the cemetery setting. Finally, Warner Brothers has added elements to some of its images that are absent from Leigh's photo: some have a green or orange tint; some prominently feature a Celtic cross and tree; and the movie poster includes pictures of the cast along its left side.

Although it may be easy to identify differences between the Warner Brothers still shots and Leigh's photograph, however, the Warner Brothers images also have much in common with the elements protected by Leigh's copyright. All of the photographs are taken from a low position, angled up slightly at the Bird Girl so that the contents of the bowls in her hands remain hidden. Hanging Spanish moss borders the tops of all the photographs except the soundtrack cover. The statue is close to centered in all of the pictures except one newspaper advertisement for the movie, which places the Bird Girl in the left third of the frame. Light shines down and envelopes the statue in all of the images, leaving the surrounding cemetery in relative darkness. All of the photographs are monochromatic.

These expressive elements all make the pictures more effective. The Spanish moss provides a top border to the images. The location of the statue and the lighting in the pictures together draw the viewer's attention. The lighting also lends a spiritual air to the Bird Girl. Finally, by keeping the contents of the Bird Girl's bowls hidden, the angle contributes to the mystery and symbolic meaning of the images.

A jury ultimately may conclude that the similarities between the protected elements of the Leigh photograph and the Warner Brothers still shots are not "substantial." The similarities are significant enough, however, to preclude summary judgment. "Substantial similarity" is a question of fact, and summary judgment is only appropriate if no reasonable jury could differ in weighing the evidence. *See Beal,* 20 F.3d at 459; *Donald Frederick Evans & Assocs. v. Continental Homes, Inc.,* 785 F.2d 897, 904 (11th Cir.1986).

### III. Leigh's Trademark Claims

In order to prevail on a claim of trademark infringement, a plaintiff has the burden of showing (1) that he had a valid trademark and (2) that the defendant had adopted an identical or similar mark such that

consumers were likely to confuse the two. *See* 15 U.S.C. § 1125(a); *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.,* 106 F.3d 355, 358 (11th Cir.1997). Trademarks are "any word, name, symbol, or device, or any combination thereof [used] to identify and distinguish [one's] goods ... from those manufactured or sold by others and to indicate the source of the goods." 15 U.S.C. § 1127.[5] Trademarks are not merely descriptive; they answer the question "Who made it?" rather than "What is it?" *See* 1 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 3:6 (4th ed.2000). Finally, the plaintiff's use of the mark must predate the defendant's potentially confusing mark. *See Tally-Ho, Inc. v. Coast Community College Dist.,* 889 F.2d 1018, 1022 (11th Cir.1990) (per curiam); 2 McCarthy, *supra,* at § 16.1, 16.4.

The district court interpreted Leigh's Lanham Act claims as an attempt to protect his visual style and concluded that trademark was not an appropriate tool for such an endeavor. Leigh has clarified that he is simply claiming he used the Bird Girl photograph as a "source identifier" to promote his workshops and the sale of his artwork. To support his trademark claims, Leigh proffered a brochure for his Southern Images Gallery in Savannah; the web sites for his gallery and the Nuovo Fine Art Gallery; advertisements and flyers for exhibits and workshops at the Houston Photo Center, the Genesee Center for the Arts, and the Gwinnett Fine Arts Center; and his own affidavit.[6] None of the flyers, announcements, and web sites indicate use of the Bird Girl photograph before the release of the Warner Brothers movie in late 1997,[7] and they therefore

[5]In a footnote of his reply brief, Leigh notes that the Bird Girl photograph might more accurately be described as a service mark. Whereas trademarks identify the source of goods for sale, service marks identify the provider of services. Service marks also are defined in 15 U.S.C. § 1127. The distinction does not matter for this appeal, and the parties and district court consistently refer to Leigh's purported *trade*mark rights. We too will use the term "trademark" in reference to Leigh's rights under the Lanham Act for consistency's sake.

[6]*See* Notice of Filing Original Aff. (R3, Tab 32); Pl.'s Opp'n to Def.'s Mot. for Summ. J. (R4, Tab 48).

[7]The Houston Center for Photography's newsletter featuring the Bird Girl photograph is dated May/June 1998, as is the advertisement for the Gwinnett Fine Arts Center's "juried exhibition of photography." The Genesee Center for the Arts, Education, and New Ideas featured the Bird Girl photograph in a Spring 1998 list of classes and events that advertised "A Visit from Jack Leigh" on May 8 and 9, 1998. Leigh also submitted a flyer from the Genesee Center advertising his May 1998 lecture and

fail as a matter of law to establish Leigh's ownership of trademark rights enforceable against Warner Brothers. *Cf. Tally-Ho,* 889 F.2d at 1023.

The only evidence submitted by Leigh to establish use of the Bird Girl photograph as a trademark prior to the release of the Warner Brothers movie was his third affidavit.[8] That affidavit, however, is little more than a brief, conclusory assertion of trademark usage. It asserts that Leigh has used the photograph to promote his work since May 1994 and it mentions the Southern Images Gallery by name, but it is devoid of any other detail. "This court has consistently held that conclusory allegations without specific supporting facts have no probative value." *See Evers v. General Motors Corp.,* 770 F.2d 984, 986 (11th Cir.1985). "[O]ne who resists summary judgment must meet the movant's affidavits with opposing affidavits setting forth specific facts to show why there is an issue for trial." *Gossett v. Du-Ra-Kel Corp.,* 569 F.2d 869, 872 (5th Cir.1978);[9] *see also* Fed. R. Civ. Proc. 56(e). Leigh has the burden of proving that he had trademark rights in the Bird Girl photograph before the release of the Warner Brothers movie; in response to the defendant's motion for summary judgment, he did not provide any "specific facts" supporting prior use sufficient to create a genuine issue for trial.

Furthermore, the web sites and printed advertisements or announcements largely use the Bird Girl photograph descriptively, as an example of Leigh's work, rather than as a trademark. The Houston Photo Center, for example, printed the Bird Girl photograph as an example of the works available at an auction. Similarly, the Gwinnett Fine Arts Center showed the Bird Girl photograph in an advertisement as a sample of the art on display at a juried exhibition. When the Genesee Center for the Arts advertised a workshop and

___

workshop. Print-outs of the Southern Images and Fine Art Galleries' web sites, which feature the Bird Girl photograph, are dated April 1, 1998. There is no indication of when Leigh created the brochure advertising Leigh's Southern Images Gallery with the Bird Girl photograph on the cover. *See* Notice of Filing Original Aff. (R3, Tab 32); Pl.'s Opp'n to Def.'s Mot. for Summ. J. (R4, Tab 48).

[8]*See* Notice of Filing (R4, Tab 47).

[9]Decisions by the former Fifth Circuit issued before October 1, 1981 are binding as precedent in the Eleventh Circuit. *See Bonner v. City of Prichard, Ala.,* 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

lecture by Leigh, it used both the Bird Girl image and another of Leigh's photographs, entitled "Cold Mellons." Similarly, the Bird Girl appears on the web site for the Southern Images Gallery in thumbnail size next to the gallery's name, address, and phone number. This initially appears to be a trademark use of the photograph, but the thumbnail rotates every few seconds through five of Leigh's pictures.

The prominent display of the Bird Girl photograph on the cover of a brochure for the Southern Exposure Gallery and the thumbnail use of the photograph on the Nuovo Gallery web site's "link" to the Southern Exposure Gallery may be attempts to identify the gallery as a whole and all the art it sells with the widely-recognized image. Even these examples, however, are not so clear. All of the printed exhibits offered by Leigh, including the materials related to the Southern Images Gallery, concern special events or sites at which the Bird Girl photograph itself is for sale, on display, or subject to discussion. As used in the materials submitted by Leigh, the Bird Girl image "strikes us not as a separate and distinct mark *on the good,* but, rather, as the good itself." *Rock & Roll Hall of Fame & Museum, Inc. v. Gentile Prods.,* 134 F.3d 749, 754 (6th Cir.1998).

The district court also held that as a matter of law Leigh could not prove the second element of a trademark claim, a likelihood of confusion. More specifically, Leigh would have to prove that consumers were likely to believe that he sponsored or was involved with the Warner Brothers movie or promotional materials. Leigh argues that he raised genuine issues of fact relating to a number of the factors this circuit considers when determining the likelihood of confusion. *See E. Remy Martin & Co. v. Shaw-Ross Int'l Imports, Inc.,* 756 F.2d 1525, 1530 n. 15 (11th Cir.1985) (listing the factors relevant to the likelihood of confusion). Warner Brothers, in turn, raises the fair use doctrine and the First Amendment as alternative defenses to Leigh's trademark infringement claims. We need not consider these issues, however, because we hold that Leigh has no trademark rights in his Bird Girl photograph.

Finally, Leigh argues that this case is similar to *Gilliam v. American Broad. Cos.,* 538 F.2d 14, 24-25 (2d Cir.1976), in which the Second Circuit held that altering an artist's work and attributing the new

10

creation to the artist can violate the Lanham Act. *Gilliam* in effect granted protection for an artist's moral rights in trademark law. *See id.* at 24. This circuit has not adopted *Gilliam,* but even if we were to do so, Leigh cannot satisfy either of the essential elements for a *Gilliam* claim. First, Warner Brothers did not actually alter or distort Leigh's photograph when producing its film and accompanying promotional materials; instead, it started from scratch, building its own replica of the Bird Girl statue to photograph and film. Second, Warner Brothers never attributed its images of the Bird Girl statue to Leigh. The only colorable evidence of such an attribution presented by Leigh is a statement by the movie's screenwriter at a publicity appearance for the movie, "Yeah, he [Director Clint Eastwood] uses it in the movie."[10] Leigh argues that the screenwriter might have meant that Eastwood used Leigh's work. The deposition transcript makes clear, however, that the screenwriter was talking about the film sequences of the Bird Girl,[11] which could not have been alterations of Leigh's photograph and cannot give rise to a *Gilliam* claim.

## IV. Discovery

In addition to claiming that the court erred in its application of copyright and trademark law to the evidence before it, Leigh argues that the court abused its discretion in granting summary judgment without allowing him to conduct additional discovery. The court granted a protective order staying all discovery early in the litigation, and did not lift the stay before ruling on Warner Brothers' summary judgment motions.

Leigh cites numerous cases for the proposition that it generally is inappropriate for a court to rule on a summary judgment motion when the non-moving party has not been able to obtain discovery. *See Fernandez v. Bankers Nat'l Life. Ins. Co.,* 906 F.2d 559, 570 (11th Cir.1990); *Snook v. Trust Co. of Georgia Bank,* 859 F.2d 865, 870-71 (11th Cir.1988). Federal Rule of Civil Procedure 56(f) allows courts to defer

---

[10]Pl.'s Substitute Mem. in Supp. of Its Mot. for Prelim. Inj., Ex. 7 at 14 (R3, Tab 39). The statement appears in a deposition of the novel's author, John Berendt.

[11]*See id.* at 15.

11

ruling on summary judgment motions until the non-moving party has been able to conduct all necessary discovery.

We review the court's management of discovery in this context for abuse of discretion, however, and a party must be able to show substantial harm to its case from the denial of its requests for additional discovery. *See Carmical,* 117 F.3d at 493. In this case, the court had an adequate record to grant Warner Brothers's motion for summary judgment on Leigh's trademark claims and the copyright claim concerning the film footage. Any evidence of Leigh's use of the Bird Girl photograph as a trademark would have been in his possession, not Warner Brothers'. Similarly, no evidence that Warner Brothers could have produced would change the fact that its film sequences are not substantially similar to the copyrighted elements of Leigh's photograph.

Because the substantial similarity of the Warner Brothers still shots to Leigh's photograph remains an open question fact, additional discovery for Leigh's copyright claim could well be appropriate.

## V. Conclusion

We AFFIRM the grant of summary judgment for the Defendant on Leigh's trademark claims and the copyright claim as it relates to the film sequences. We REVERSE the grant of summary judgment for the Defendant on Leigh's copyright claim as it relates to Warner Brothers' single-frame images, and we REMAND for proceedings consistent with this decision.