[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
May 5, 2005
THOMAS K. KAHN
CLERK

No. 04-11325
Non-Argument Calendar

_____

D. C. Docket Nos. 01-00380-CV-1-CB
and 02-00304-CV-CB-C

ELVIE MELISSA WALLACE,

Plaintiff-Appellant,

versus

TELEDYNE CONTINENTAL
MOTORS, et al.,

Defendants-Appellees.

_____

Appeals from the United States District Court
for the Southern District of Alabama

_____

**(May 5, 2005)**

Before EDMONDSON, Chief Judge, BLACK and PRYOR, Circuit Judges.

PER CURIAM:

Plaintiff-Appellant Elvie Melissa Wallace appeals pro se the district court's grant of summary judgment in favor of her former employer, Teledyne Continental Motors (Teledyne), and her union, Local Union 1639 International Union of United Automobile, Aerospace, and Agricultural Implement Workers of America (the Union). No reversible error has been shown; we affirm.

BACKGROUND

Plaintiff, a black female, alleged that Teledyne discriminated against her based on her race and gender, in violation of Title VII, 42 U.S.C. §§ 2000e et seq., when Teledyne refused several times to promote her. Plaintiff also claimed that the Union discriminated against her, in violation of Title VII, and breached its duty of fair representation, in violation of the Labor Management Relations Act, 29 U.S.C. § 301, by refusing to file a grievance on her behalf over Teledyne's failure to promote her. And Plaintiff alleged that Teledyne retaliated against her filing of EEOC complaints when it delayed recalling her after a lay off.

Teledyne manufactures aircraft engines and parts at its Mobile, Alabama, plant. Plaintiff was hired in September 1999 as a "production helper" (Labor

2

Grade 12) in the cylinders department. Her job was to deburr newly-machined cylinders. Plaintiff later submitted several bids for advancement to a position as an "assembler" (Labor Grade 8).[1] The duties of an assembler include building aircraft engines from component parts and pressure testing engines. The position requires "high mechanical aptitude with general knowledge of internal combustion engines." In December 1999, Plaintiff and four white employees did bid on an assembler position. None were selected.[2]

Plaintiff alleged that, in January 2000, she saw another job posting for assembler. Teledyne disputes the existence of this posting. Unlike the December 1999 posting, Plaintiff claimed that the January 2000 posting required the applicant to have or be eligible for an Aircraft & Powerplant ("A&P") license. Plaintiff attended an aviation technical college and claimed she was eligible for an A&P license. She alleged that she submitted a bid slip for this job. In March

---

[1] Teledyne and the Union have a collective bargaining agreement ("CBA") that controls the terms of employment for Teledyne's production and maintenance employees; the CBA sets forth the procedure for the formal bidding process for jobs covered by the CBA. If a vacancy or need exists, a department manager submits an employee requisition form to the human resources department, which posts a notice of job opening in the plant. Teledyne is required to post this notice at least 48 hours before filling the job. An employee bids for the job by submitting a "bid slip" to the HR department, which date-stamps the original and a carbon copy and returns the original to the employee. If no qualified bargaining unit employee bids on the job, Teledyne may hire from outside the company.

[2] Plaintiff does not complain of this failure to promote.

3

2000, Plaintiff asserted that she saw two unfamiliar white men working in the engine assembly department. She believed that these men were hired in response to the alleged January posting and that Teledyne had discriminated against her by promoting these men.

In April 2000, Plaintiff complained to her Union steward, Pleas Evans, a black male, that she had been passed over for promotion. Plaintiff did not have a copy of her bid slip; Evans told her that he could not file a grievance without a bid slip. Evans and Teledyne's HR coordinator could not locate Plaintiff's bid slip. Plaintiff then sought to file a grievance through Evans, who gave her a blank bid slip to complete. But Evans allegedly would not back date-stamp the bid slip to January 2000 unless Plaintiff had sex with him. Plaintiff refused.

On 27 April, Plaintiff spoke to Doug Williams, president of the Union, who advised that a grievance would be difficult to pursue without a bid slip. Plaintiff thought she had a grievance because she believed Teledyne had lost her bid slip. But neither she nor the Union filed a grievance about the January 2000 assembler position. She did not make another complaint about the position to the Union and did not complain of Evans's alleged sexual harassment.

In mid-April 2000, Teledyne's president had ordered a reduction in force; Plaintiff believed that she would be laid off or bumped into another position.[3] But on 27 April, after Plaintiff spoke to Williams, her supervisor informed her that she was being terminated, rather than laid off. Plaintiff was recalled about ten days later, along with several other employees who had been laid off. During this lay-off, Plaintiff filed an EEOC discrimination charge based on the alleged January 2000 posting.

Teledyne posted notices for two assembler positions in late May and early June 2000. No bargaining unit employee bid on these postings; so Teledyne advertised outside and eventually hired two white males in late June 2000.[4] Plaintiff admitted that she did not apply for these jobs. And in July 2000, Plaintiff applied for another assembler position; but Teledyne selected a black male employee with more seniority. Plaintiff's supervisor decided that Plaintiff was

---

[3] Under the CBA, Teledyne conducts lay-offs based on employees' seniority rights: more senior employees in higher job classifications can avoid being laid off by "bumping" less senior employees in Labor Grades 12 and 13 in Job Group 7 (including Plaintiff's position as Production Helper). Teledyne then recalls laid-off employees based on seniority.

[4] Teledyne also claimed that it posted another assembler opening in late May 2000, but that it could not fill the position with a bargaining unit employee. Teledyne eventually hired a previous employee, Leonard Staehle, a white male. The district court denied Plaintiff's attempt to amend her complaint to add another claim of failure to promote based on the Staehle hire.

unqualified to be an assembler: he determined that she had no readily applicable previous work experience or education.

On 1 March 2001, Teledyne instituted a large-scale lay-off of many employees, including Plaintiff. In March 2001, Plaintiff filed two grievances claiming that she was laid off in retaliation for filing her previous EEOC charge. The Union did not process her grievances further: it determined that her grievances did not violate the CBA. In September 2001, Plaintiff filed a second EEOC charge claiming retaliatory delay in recall. Teledyne recalled Plaintiff in February 2002.

DISCUSSION

We review the district court's rulings on a motion for summary judgment <u>de novo</u>; we view all evidence and factual inferences therefrom in the light most favorable to the non-moving party. <u>Miller v. King</u>, 384 F.3d 1248, 1258-59 (11th Cir. 2004). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

6

Plaintiff first argues that she established a prima facie case that Teledyne discriminated against her by failing to promote her to the assembler position in January 2000. And she claims that Teledyne's proffered explanation about the two white men she saw working in the assembly department -- that they could have been any of a number of salaried employees assigned to work as assemblers on a short term basis -- is unworthy of belief.

To evaluate this claim, we use the familiar burden-shifting framework established by the Supreme Court in McDonnell Douglas Corp. v. Green, 93 S.Ct. 1817 (1973). In this framework, Plaintiff must establish a prima facie case of discrimination, which creates a presumption of discrimination. Teledyne then must offer a legitimate, nondiscriminatory reason for the employment action to rebut the presumption. If Teledyne successfully rebuts the presumption, the burden shifts back to Plaintiff to discredit the proffered nondiscriminatory reason by showing that it is pretextual. Id. at 1824-25.

To establish a prima facie case of discriminatory failure to promote, Plaintiff must show (1) that she is a member of a protected class under Title VII, (2) that she was qualified for the assembler position, (3) that she applied for position and was rejected, and (4) that the position remained open or was filled by

7

a person outside the protected class to which Plaintiff belongs.  <u>Walker v. Mortham</u>, 158 F.3d 1177, 1179 n.2, 1185-86 (11th Cir. 1998).

As the district court noted, Plaintiff's evidence on the second and fourth elements of the <u>prima facie</u> case is weak.  Her claim that she was qualified for the assembler position is based solely on her subjective testimony: she presented only her conclusory testimony that she was eligible for an A&P license.  <u>See</u> <u>Leigh v. Warner Bros., Inc.</u>, 212 F.3d 1210, 1217 (11th Cir. 2000) (stating that "conclusory allegations without specific supporting facts have no probative value", even in summary judgment context).  And even assuming the existence of the January 2000 posting, Plaintiff's subjective belief -- without more -- that the two white males she saw two months later were hired as assemblers pursuant to this job posting is not enough to satisfy her burden of proof on the fourth <u>prima facie</u> element, or to rebut as pretextual Teledyne's explanation for the presence of these men.  <u>See</u> <u>Grigsby v. Reynolds Metals Co.</u>, 821 F.2d 590, 597 (11th Cir. 1987) (stating that plaintiff's conclusory allegations not sufficient to raise inference of pretext or discrimination where employer offers extensive evidence of legitimate, nondiscriminatory reasons for its acts).

To the extent Plaintiff also challenges the hiring of two white male assemblers in June 2000, Plaintiff did not apply for this position.  Also, other than

8

the alleged January 2000 posting that referred to an A&P license, the assembler position required "high mechanical aptitude with general knowledge of internal combustion engines." Plaintiff has presented no evidence challenging her supervisor's rejection of her application for the July 2000 posting pursuant to his determination that she was unqualified to be an assembler based on her previous work experience and education. Plaintiff provides us with no reason to believe that, had she applied for the earlier June 2000 posting, her supervisor would have deemed her qualified.[5]

Plaintiff also argues that Teledyne retaliated against her for complaining of discrimination when it delayed recalling her after the March 2001 lay-off. She maintains that Teledyne improperly placed more senior, but unqualified, employees into her position of production helper; she asserts that her particular job

---

[5] Plaintiff also seemingly challenges the district court's refusal to allow her to amend her complaint to add more claims of retaliation and discrimination by Teledyne: (1) hiring Staehle as assembler in May 2000 without following the proper job posting procedures, (2) not promoting Plaintiff to assembler in June 2000, despite her failing to bid for that position, based on Plaintiff's new contention that unsuccessful, prior bids for a position (i.e., her bid in December 1999 and her alleged bid in January 2000) were good for one year, and (3) failing to offer Plaintiff a temporary position in the assembly department in May 2000. Plaintiff attempted to add these claims after that court had ruled on Defendants' first motions for summary judgment and shortly before the case was scheduled for trial. The district court did not abuse its discretion in refusing to allow Plaintiff to add claims at such a late date or based on facts in her possession long before. See Best Canvas Prods. & Supplies, Inc. v. Ploof Truck Lines, Inc., 713 F.2d 618, 622-23 (11th Cir. 1983) (no abuse of discretion for district court to refuse to allow amendment of complaint based on movant's undue delay).

of deburring cylinder heads is unique and that the recalled employees lacked deburring experience.

Assuming without deciding that Plaintiff established a prima facie case of retaliation,[6] Teledyne presented a legitimate, nondiscriminatory reason for not recalling her sooner: its reliance on the lay-off and recall procedures in the CBA. See E.E.O.C. v. Total Sys. Servs., Inc., 221 F.3d 1171, 1176 (11th Cir. 2000) (employer may proffer legitimate, nondiscriminatory reason for adverse employment act). Before recalling Plaintiff, Teledyne recalled employees (1) whose job classifications were higher than production helper and (2) whose job classifications were the same, but who were more senior. Teledyne produced evidence that it considered material handlers (Labor Grade 13) and production helpers (Labor Grade 12), to be equivalent for purposes of recall. Based on seniority, all employees were entitled to recall as material handler or production helper, the lowest-skilled positions at the plant. Plaintiff's argument that Teledyne should not have recalled more senior, but purportedly unqualified, material

---

[6] A plaintiff establishes a prima facie case of retaliation under Title VII by showing (1) that she engaged in statutorily protected expression, (2) that she suffered an adverse employment action, and (3) that some causal relation exists between the two events. Cooper v. Southern Co., 390 F.3d 695, 740 (11th Cir. 2004).

10

handlers and production helpers before recalling her thus amounts to nothing more than a disagreement with Teledyne's interpretation of the CBA.[7]

Finally, Plaintiff argues (without much detail) that the Union discriminated against her and failed to represent her adequately in her grievances against Teledyne. But Plaintiff has adduced no facts showing that the Union's refusal to pursue her grievances, based on either the January 2000 assembler posting or the March 2001 lay-off, was based on race or gender.[8] Nor has Plaintiff shown that the Union failed in its duty to represent her adequately and fairly: her argument is based on her disagreement both with the Union's unwillingness to file a grievance without a job bid slip and with its interpretation of the CBA. See Turner v. Air Transp. Dispatchers' Ass'n, 468 F.2d 297, 300 (5th Cir. 1972) (opining that union refusal to file employee's grievance when it believes grievance to be without merit "does not amount to perfunctory or arbitrary treatment").

---

[7] To the extent Plaintiff challenges as retaliatory the initial May 2000 lay-off, Teledyne's president ordered the lay-off before Plaintiff filed her first EEOC charge. And Plaintiff was recalled after only ten days. She cannot show a causal link between the lay-off and the filing of her EEOC charge.

[8] Plaintiff also has not shown why the Union should be held liable for Evans's alleged sexual harassment. Evans was not a Union officer. And because Plaintiff did not complain to the Union of his offer to exchange a fake bid slip for sexual favors, she did not show that the Union was aware of Evans's act until she testified about it much later.

In sum, the district court properly granted summary judgment in favor of Defendants on all of Plaintiff's claims.[9]

AFFIRMED.

---

[9] Plaintiff mentions in the issues section of her initial brief that the Union retaliated against her and that the district court erred in denying her post-judgment Fed.R.Civ.P. 60(b) motions. But she offers no substantive argument on these issues in her initial brief; they are abandoned. See Irwin v. Hawk, 40 F.3d 347, 347 n.1 (11th Cir. 1994) (stating that a pro se litigant abandons an issue by failing to challenge it on appeal); Greenbriar, Ltd. v. City of Alabaster, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989) (deeming an issue waived where a party fails to include substantive argument and only makes a passing reference to the order appealed from).