**MEDALLION HOMES GULF COAST, INC., Plaintiff–Appellant,**

v.

**TIVOLI HOMES OF SARASOTA, INC., et al., Defendants–Appellees.**

No. 15–15393
Non–Argument Calendar

United States Court of Appeals, Eleventh Circuit.

Date Filed: 07/26/2016

Yardley Drake Buckman, II, Amiee Ruth Buckman, Buckman & Buckman, PA, Sarasota, FL, for Plaintiff–Appellant.

Duane Allan Daiker, Mindi Marie Richter, Shumaker Loop & Kendrick, LLP, Tampa, FL, Christopher A. Staine, Shumaker Loop & Kendrick, LLP, Sarasota, FL, for Defendants–Appellees Tivoli Homes of Sarasota, Inc., Jason Kubisiak, Start To Finish Drafting, L.L.C.

David William Smith, Law Office of David W. Smith, Sarasota, FL, for Defendants–Appellees Nicole Duke, Michael Duke.

Before JORDAN, JULIE CARNES and ANDERSON, Circuit Judges.

PER CURIAM:

Medallion Homes Gulf Coast, Inc. ("Medallion") appeals from the district court's grant of summary judgment to Tivoli Homes of Sarasota, Inc. ("Tivoli"), Nicole Duke, Michael Duke, Jason Kubisiak, and Start to Finish Drafting, L.L.C. in their federal copyright infringement suit brought pursuant to 17 U.S.C. § 501. Medallion's complaint alleged in relevant part that Defendants-Appellees infringed Medallion's copyright in a technical drawing and architectural plan called "Santa Maria" by obtaining a copy of the Santa Maria plan and subsequently building a home that was "substantially similar" to the Santa Maria. The district court granted summary judgment in favor of Tivoli, finding that the differences between the Tivoli home and the Medallion design were sufficiently significant that no reasonable finder of fact could determine that the works were "substantially similar" so as to constitute copyright infringement. On appeal, Medallion argues that the district court erred because genuine issues of fact existed as to whether Tivoli copied protected elements of Medallion's Santa Maria design.

This Court reviews a district court's ruling on a motion for summary judgment *de novo*, construing all evidence in the light most favorable to the non-moving party. Leigh v. Warner Bros., Inc., 212 F.3d 1210 (11th Cir. 2000). Summary judgment is appropriate when the pleadings, depositions, and affidavits submitted by the parties show no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

This Court recently addressed the law governing copyright infringement of architectural plans in Home Design Services, Inc. v. Turner Heritage Homes Inc., 825 F.3d 1314 (11th Cir. 2016). This case, which follows closely from our earlier precedent in Intervest Construction, Inc. v. Canterbury Estate Homes, Inc., 554 F.3d 914 (11th Cir. 2008), controls the outcome in the instant case.

As we explained in Home Design Services, copyright infringement has two elements: "(1) ownership of a valid copyright, and (2) copying of [protectable] elements." Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC, 702 F.3d 1312, 1325 (11th Cir. 2012) (alteration in original) (quoting Oravec v. Sunny Isles Luxury Ventures, LC, 527 F.3d 1218, 1223 (11th Cir. 2008)). The second element can be proven either with direct proof of copying[1] or, if direct proof is unavailable, "by demonstrating that the defendants had access to the copyrighted work and that the works are 'substantially similar.'" Oravec, 527 F.3d at 1223 (citation omitted). However, "[n]o matter how copying is proved, the plaintiff must also establish specifically that the alleged infringing work is substantially similar to the plaintiff's work." Leigh, 212 F.3d at 1214. "Even in the rare case of a plaintiff with direct evidence that the defendant attempted to appropriate his original expression, there is no infringe- ment unless the defendant succeeded to a meaningful degree." Id. In the instant case, it is undisputed that Medallion owns a valid copyright to the Santa Maria technical drawing and architectural work.[2] It is also undisputed that the Dukes had access to the marketing materials provided by Medallion. Therefore, Appellants will prevail on appeal if they can show that a "reasonable jury could find [the Santa Maria plan and the Duke Plan] substantially similar at the level of protected expression." Home Design Servs., 825 F.3d at 1321 (quoting Miller's Ale House, 702 F.3d at 1325).

"[F]loor plans, like any work, receive copyright protection only to the extent that they qualify as 'original works of authorship.'" Id. (quoting 17 U.S.C. § 102(a)). "[L]ike any work, floor plans are subject to the 'fundamental axiom that copyright protection does not extend to ideas but only to particular expressions of ideas.'" Id. (quoting Oravec, 527 F.3d at 1224). "[M]ore concretely, the Copyright Act restricts which elements of architectural floor plans are protectable through its definition of a copyrightable 'architectural work.'" Id. at 1321. "17 U.S.C. § 101 defines an 'architectural work' as 'the design of a building as embodied in any tangible medium of expression, including a building, architectural plans, or drawings. The work includes the overall form as well

---

1. Medallion argues that there is undisputed direct evidence of copying as demonstrated by Nicole Duke's deposition testimony that she made handwritten redline modifications and annotations to a printout of the Santa Maria floor plan provided to her by Medallion and then showed that modified plan, along with other materials, to the draftsman for the purpose of preparing the Duke plan. However, Tivoli denies copying. In any event, the record, at most, would support a finding that Defendants made a copy only of Medallion's Santa Maria design as modified by Mrs. Duke. Moreover, even if there were evidence that the Dukes attempted to copy the Santa Maria plan, "there is no infringement unless the defendant succeeded to a meaningful degree." Leigh, 212 F.3d at 1214. Therefore we would still need to perform the same substantial similarity analysis performed below.

2. Medallion received Certificates of Registration for the work entitled "Santa Maria 2425" as an "Architetural Work" [sic], Registration Number VAu–601–492, and as a "Technical Drawing," Registration Number VAu–601–495. Both Certificates of Registrations display an effective date of December 8, 2003.

as the arrangement and composition of spaces and elements in the design, but does not include individual standard features.' " Id.

In Intervest Construction, Inc. v. Canterbury Estate Homes, Inc., we likened the statutory definition of "architectural work" to that of a "compilation." 554 F.3d 914, 919 (11th Cir. 2008). We noted that the substantial similarity inquiry is "narrowed" when dealing with a compilation. Id. at 919. "[W]hen viewed through the narrow lens of compilation analysis[,] only the original, and thus protected[,] arrangement and coordination of spaces, elements[,] and other staple building components should be compared." Id. We identified the potentially protectable elements of an architectural work as "the arrangement and coordination of those common elements ('selected' by the market place, i.e., rooms, windows, doors, and 'other staple building components')." Id.

Our recent Home Design Services decision described the application of the narrowed substantial similarity test to the facts of the Intervest case:

> Turning to the particular floor plans at issue in Intervest, we concluded that no reasonable jury could deem them substantially similar at the level of protected expression. Although the floor plans shared the same general layout, the district court had identified and "focused upon the dissimilarities in [the] coordination and arrangement" of "common components and elements." [554 F.3d] at 916, 922 app. In the abstract, the differences identified by the district court might come across as modest: The district court pointed out minor dimensional discrepancies between the plans' rooms, slight changes in the presence, arrangement, or function of various features, incremental modifications to a number of walls, and a smattering of

other dissimilarities. Id. at 916–18. Yet the district court ruled that these differences precluded a finding that the floor plans were substantially similar at the level of protected expression, and we affirmed. Id. at 921.

Home Design Servs., 825 F.3d at 1322. We then described Intervest as holding "that there was no copyright infringement because the floor plans at issue were similar only with respect to their noncopyrightable elements." Id. at 1324. We explained that "[a]lthough the Intervest floor plans shared the same overall layout, the layout was not copyrightable in that case." Id. Instead, "[b]ecause the layouts were noncopyrightable, and because the floor plans differed in terms of dimensions, wall placement, and the presence and arrangement of particular features (or use of slightly varied features), we held that the similarities between the plans concerned only their noncopyrightable elements." Id.

Turning to the facts in the Home Design Services case, we observed that both plans depicted what is known as "a 'four-three split plan': a four-bedroom, three-bathroom house with a 'master' bedroom or suite on one end and three more bedrooms on the other." Id. at 1316. We then observed that "[t]he plans ... share in common the same set of rooms, arranged in the same overall layout." Id. We further observed that "[t]he plans also share the presence, location, and function of many (but not all) walls, entryways, windows, and fixtures." Id. Nonetheless, we concluded that there was no infringement:

> Although HDS–2089 and the Turner plans share the same general layout, this is only because both sets of plans follow the customary four-three split style, as well as the attendant industry standards. Kevin Alter, Home Design's own expert, conceded on cross-examination that HDS–2089's split-bedroom arrangement aligns with industry standards, as does the contigu-

ity of the dining room, breakfast nook, and kitchen. Alter further characterized HDS–2089 as neither "unusual" nor "radically different [from] ˙ the many things that are on the market." No one, including Home Design, owns a copyright to the idea of a four-three split style, nor to the industry standards that architects regularly heed to achieve such a split.

Id. at 1325. In other words, the shared or similar elements between the two plans were non-protectable elements. By contrast, the potentially protectable elements were not substantially similar:

> The differences between HDS–2089 and the Turner plans are differences in dimensions, wall placement, and the presence, arrangement, and function of particular features around the house. Because the same sorts of differences indicated no infringement in Intervest, that result follows in this case as well. See Intervest, 554 F.3d at 916–18.

Id. at 1326.

In the instant case, as in Home Design Services and Intervest, the Santa Maria and the Duke floor plans are at first glance visually similar. Both plans can be described as four-three split plans, that is, four-bedroom three-bathroom plans with a master bedroom on one end and three other rooms at the other end. In the Santa Maria, the master bedroom is on the right side, and in the Duke plan, the master bedroom is on the left side.[3] Both plans are arranged around a large center open area containing a contiguous great room, dining room, kitchen, and nook. Both plans contain a two-car garage. However, despite the fact that the plans share in common the same set of rooms, arranged in the same overall layout, these shared elements are not copyrightable elements. Indeed, the same basic split layout was present in both our Home Design Services and Intervest cases.

The district court, relying both on Defendant Kubisiak's deposition and Medallion's own expert, amply examined the numerous differences between the plans. Indeed, Medallion's expert identified more differences than similarities. These differences include differences in dimensions,

---

**3.** Medallion, relying on Aitken, Hazen, Hoffman, Miller, P.C. v. Empire Constr. Co., 542 F.Supp. 252, 260 (D. Neb. 1982), and Spent v. Montana Silversmiths, No. SA-11-CA-307-XR, 2012 WL 400964 (W.D. Tex. Feb. 7, 2012), urges us to adopt a rule that the use of a mirror-image design constitutes copyright infringement. Although it is not entirely clear, Medallion apparently means that any use of the geometric transformation known as a reflection about a horizontal axis should constitute *per se* infringement of an architectural plan. We decline to adopt such a rule. We note that the cited Aitken order did not address the issue of infringement, which was dealt with on partial summary judgment at an earlier stage of that proceeding. See Aitken, 542 F.Supp. at 256. The lone reference to a "mirror image" surfaced in a discussion of the fair use doctrine, not in a discussion of infringement, and in any case it is not clear what the court meant by the term "mirror

image" or what effect it had on the court's analysis. Id. at 260. It is possible the court meant that the alleged copy was identical to the copyrighted work. In Spent, an unpublished order of the Western District of Texas, it appears that the defendant did *nothing more than* create a reflection of the copyrighted design and then remove the copyright symbol from the reflected, but otherwise identical, design. See Spent, 2012 WL 400964, at *1. The Spent decision, therefore, at most stands for the proposition that making a "mirror image" or reflection about a horizontal line of a copyrighted work is insufficient as a defense to copyright infringement. Here, unlike in Spent, the allegedly infringing work is not merely a mirror image of the copyrighted work. Rather, as discussed in the text, it has numerous and substantial differences with the copyrighted work at the level of protected elements.

wall placement, and the presence, arrangement, and function of particular features around the house such as doors, windows, and other fixtures. See Dk. 38 at 9–16. We need not repeat the district court's excellent analysis. We conclude that the differences identified by the district court are significant; they are comparable to those described in Home Design Services and Intervest. For example, instead of having two separate garage spaces as in the Santa Maria, the Duke plan instead includes one two-car garage and one finished and air-conditioned hobby room with a niche area directly outside of the entrance door. Additionally, unlike the two-car garage in the Santa Maria, the two-car garage in the Duke residence also differs with respect to dimensions, the inclusion of attic access, and the number and placement of windows and doors. The numerous and significant differences discussed by the district court indicate that these plans differ where it matters: at the level of protectable elements.

In light of our precedent in Home Design Services and Intervest, and based on our de novo review of the briefs and the record, we agree with the district court. Appellant has not shown that there is a genuine question of fact as to substantial similarity. The district court's grant of summary judgment to Defendants–Appellees is affirmed.

AFFIRMED.