[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-14965
Non-Argument Calendar
_____

D.C. Docket No. 3:14-cv-00531-HLA-MCR

ARTHUR RUTENBERG HOMES, INC., et al.,

Plaintiffs-Appellants,

versus

JEWEL HOMES, LLC, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(July 26, 2016)

Before JORDAN, JULIE CARNES and ANDERSON, Circuit Judges.

PER CURIAM:

Plaintiffs-Appellants Arthur Rutenberg Homes, Inc. ("Rutenberg") and Marcus Allen Homes, Inc. ("Marcus Allen") appeal from the district court's grant of summary judgment to Defendants-Appellees Jewel Homes, LLC ("Jewel"), Julie D. Irvin ("Irvin"), Mary C. Lesher, and Michael B. Lesher, in their federal copyright infringement suit brought pursuant to 17 U.S.C. § 501. Appellants' complaint alleged in relevant part that Appellees infringed Rutenberg's federally copyrighted "Amalfi Model" architectural plan and work by preparing an architectural plan ("the Lesher Plan") to build a home that is substantially similar to the copyrighted Amalfi plan and work. The district court granted summary judgment to Appellees on the basis that the differences between the two designs are so significant that no reasonable, properly instructed jury could find the works substantially similar. On appeal, Appellants argue that the existence of genuine issues of material fact as to substantial similarity precludes summary judgment.[1]

---

[1] Plaintiffs-Appellants also argue that the grant of summary judgment deprived Plaintiffs of their right to trial by jury under the Seventh Amendment to the United States Constitution. To the extent that this claim represents more than a reiteration of their primary merits argument that the existence of genuine questions of material fact should have precluded summary judgment, it is without merit. It has long been recognized "that when the evidence given at the trial, with all inferences that the jury could justifiably draw from it, is insufficient to support a verdict for the plaintiff, so that such a verdict, if returned, must be set aside, the court is not bound to submit the case to the jury, but may direct a verdict for the defendant" without violating the Seventh Amendment. Randall v. Baltimore & O.R. Co., 109 U.S. 478, 481 (1883). See also Home Design Servs., Inc. v. Turner Heritage Homes Inc., No. 15-11912, 2016 WL 3361479, at *9 (11th Cir. June 17, 2016) ("We have repeatedly sanctioned summary judgment determinations that one architectural work does not infringe on another as a matter of law. . . This practice should be unremarkable to all: The whole purpose of summary judgment and judgment as a matter of law is to allow judges to remove questions from the jury when the evidence can support only one result. And we have further held that identifying floor plans' unprotected portions is a question

2

This Court reviews a district court's ruling on a motion for summary judgment *de novo*, construing all evidence in the light most favorable to the non-moving party. Leigh v. Warner Bros., Inc., 212 F.3d 1210 (11th Cir. 2000). Summary judgment is appropriate when the pleadings, depositions, and affidavits submitted by the parties show no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

This Court recently addressed the law governing copyright infringement of architectural plans in Home Design Services, Inc. v. Turner Heritage Homes Inc., No. 15-11912, 2016 WL 3361479 (11th Cir. June 17, 2016). This case, which follows closely from our earlier precedent in Intervest Construction, Inc. v. Canterbury Estate Homes, Inc., 554 F.3d 914 (11th Cir. 2008), controls the outcome in the instant case.

As we explained in Home Design Services, copyright infringement has two elements: "(1) ownership of a valid copyright, and (2) copying of [protectable] elements." Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC, 702 F.3d 1312, 1325 (11th Cir. 2012) (alteration in original) (quoting Oravec v. Sunny Isles Luxury Ventures, LLC, 527 F.3d 1218, 1223 (11th Cir. 2008)). The second

---

of law.") (citing Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC, 702 F.3d 1312, 1326 (11th Cir. 2012); Intervest Const., Inc. v. Canterbury Estate Homes, Inc., 554 F.3d 914, 920–21 (11th Cir. 2008); Oravec v. Sunny Isles Luxury Ventures, L.C., 527 F.3d 1218, 1223 (11th Cir. 2008); Beal v. Paramount Pictures Corp., 20 F.3d 454, 459–60 (11th Cir. 1994)).

element can be proven either with direct proof of copying[2] or, if direct proof is unavailable, "by demonstrating that the defendants had access to the copyrighted work and that the works are 'substantially similar.'" Oravec, 527 F.3d at 1223 (citation omitted). However, "[n]o matter how copying is proved, the plaintiff must also establish specifically that the alleged infringing work is substantially similar to the plaintiff's work." Leigh, 212 F.3d at 1214. "Even in the rare case of a plaintiff with direct evidence that the defendant attempted to appropriate his original expression, there is no infringement unless the defendant succeeded to a meaningful degree." Id. In the instant case, it is undisputed that Rutenberg owns a valid copyright to the Amalfi architectural plan and works.[3] It is also undisputed that Defendants had access to the copyrighted work. Therefore, Appellants will

---

[2] Rutenberg, relying on Harvester, Inc. v. Rule Joy Trammell + Rubio, LLC, 716 F.Supp.2d 428 (E.D. Va. 2010), and Enterprise Management Limited, Inc. v. Warrick, 717 F.3d 1112 (10th Cir. 2013), argues that there is undisputed direct evidence of copying as demonstrated by the Defendant's stipulation that the Leshers made redline modifications to a printout of the Amalfi plan downloaded from Rutenberg's publically accessible website, scanned the modified document to a PDF, and then provided that PDF to the draftsman to prepare the Lesher plans. However, Harvester and Warrick, not binding on this court in any circumstance, are clearly distinguishable. In Warrick, defendant admitted that he had copied plaintiff's work and merely argued that plaintiff had no enforceable copyright. That decision accordingly, does not reach the question of what constitutes direct evidence of copying. Warrick, 717 F.3d at 1120. Here, in contrast, Defendants deny any copying. In Harvester, the defendant made a PDF copy of the original copyrighted work. See Harvester, 716 F. Supp. 2d at 446. In the instant case, the Defendants modified the plan before making any PDF scans. In any case, even if there were evidence that the Leshers attempted to copy the Amalfi plan, "there is no infringement unless the defendant succeeded to a meaningful degree." Leigh, 212 F.3d at 1214. Therefore we would still need to perform the same substantial similarity analysis performed below.

[3] Rutenberg received a Certificate of Registration for the work entitled "Amalfi Floor Plan & Elevation B" as a Technical Drawing, Registration Number VA 1-830-728 and as an Architectural Work, Registration Number VA 1-830-721.

prevail on appeal if they can show that a "reasonable jury could find [the Amalfi Plan and the Lesher Plan] substantially similar at the level of protected expression." Home Design Servs., 2016 WL 3361479, at *4 (quoting Miller's Ale House, 702 F.3d at 1325).

"[F]loor plans, like any work, receive copyright protection only to the extent that they qualify as 'original works of authorship.'" Id. (quoting 17 U.S.C. § 102(a)). "[L]ike any work, floor plans are subject to the 'fundamental axiom that copyright protection does not extend to ideas but only to particular expressions of ideas.'" Id. (quoting Oravec, 527 F.3d at 1224). "[M]ore concretely, the Copyright Act restricts which elements of architectural floor plans are protectable through its definition of a copyrightable 'architectural work.'" Id. at *5. "17 U.S.C. § 101 defines an 'architectural work' as 'the design of a building as embodied in any tangible medium of expression, including a building, architectural plans, or drawings. The work includes the overall form as well as the arrangement and composition of spaces and elements in the design, but does not include individual standard features.'" Id.

In Intervest Construction, Inc. v. Canterbury Estate Homes, Inc., we likened the statutory definition of "architectural work" to that of a "compilation." 554 F.3d 914, 919 (11th Cir. 2008). We noted that the substantial similarity inquiry is "narrowed" when dealing with a compilation. Id. at 919. "[W]hen viewed through

5

the narrow lens of compilation analysis[,] only the original, and thus protected[,] arrangement and coordination of spaces, elements[,] and other staple building components should be compared." Id. We identified the potentially protectable elements of an architectural work as "the arrangement and coordination of those common elements ('selected' by the market place, i.e., rooms, windows, doors, and 'other staple building components')." Id.

Our recent Home Design Services decision described the application of the narrowed substantial similarity test to the facts of the Intervest case:

> Turning to the particular floor plans at issue in Intervest, we concluded that no reasonable jury could deem them substantially similar at the level of protected expression. Although the floor plans shared the same general layout, the district court had identified and "focused upon the dissimilarities in [the] coordination and arrangement" of "common components and elements." [554 F.3d] at 916, 922 app. In the abstract, the differences identified by the district court might come across as modest: The district court pointed out minor dimensional discrepancies between the plans' rooms, slight changes in the presence, arrangement, or function of various features, incremental modifications to a number of walls, and a smattering of other dissimilarities. Id. at 916–18. Yet the district court ruled that these differences precluded a finding that the floor plans were substantially similar at the level of protected expression, and we affirmed. Id. at 921.

Home Design Servs., 2016 WL 3361479, at *5. We then described Intervest as holding "that there was no copyright infringement because the floor plans at issue were similar only with respect to their noncopyrightable elements." Id. at *7. We

6

explained that "[a]lthough the <u>Intervest</u> floor plans shared the same overall layout, the layout was not copyrightable in that case." <u>Id.</u> Instead, "[b]ecause the layouts were noncopyrightable, and because the floor plans differed in terms of dimensions, wall placement, and the presence and arrangement of particular features (or use of slightly varied features), we held that the similarities between the plans concerned only their noncopyrightable elements." <u>Id.</u>

Turning to the facts in the <u>Home Design Services</u> case, we observed that both plans depicted what is known as "a 'four-three split plan': a four-bedroom, three-bathroom house with a 'master' bedroom or suite on one end and three more bedrooms on the other." <u>Id.</u> at *1. We then observed that "[t]he plans . . . share in common the same set of rooms, arranged in the same overall layout." <u>Id.</u> We further observed that "[t]he plans also share the presence, location, and function of many (but not all) walls, entryways, windows, and fixtures." <u>Id.</u> Nonetheless, we concluded that there was no infringement:

> Although HDS-2089 and the Turner plans share the same general layout, this is only because both sets of plans follow the customary four–three split style, as well as the attendant industry standards. Kevin Alter, Home Design's own expert, conceded on cross-examination that HDS-2089's split-bedroom arrangement aligns with industry standards, as does the contiguity of the dining room, breakfast nook, and kitchen. Alter further characterized HDS-2089 as neither "unusual" nor "radically different [from] the many things that are on the market." No one, including Home Design, owns a copyright to the idea of a four–three split style, nor to the

7

industry standards that architects regularly heed to achieve such a split.

Id. at *8. The differences described by the district court in the instant case are comparable to those described in Home Design Services and Intervest. In other words, the shared or similar elements between the two plans were non-protectable elements. By contrast, the potentially protectable elements were dissimilar:

> The differences between HDS-2089 and the Turner plans are differences in dimensions, wall placement, and the presence, arrangement, and function of particular features around the house. Because the same sorts of differences indicated no infringement in Intervest, that result follows in this case as well. See Intervest, 554 F.3d at 916–18.

Id. at *8-9.

In the instant case, as in Home Design Services and Intervest, the district began by noting similarities between the Amalfi plan and the Lesher Plan. The court observed that "[t]he floor plan of the Amalfi and the Lesher Plan are visually similar in some respects and the general layout is the same." Dk. 57 at 9.  "Both floor plans are for a four-bedroom, four-bath, single-story split-plan home. . . . In both floor plans, the garage, utility room, three bed rooms and the bonus room are lined up on the right side, the master bathroom and bedroom are on the left side, with the kitchen, dining room, den and great room separating the bedroom areas situated on opposite sides of the floor plans." Dk. 57 at 9. In other words, as in Home Design Services and Intervest, the shared or similar elements between the

8

two plans are non-protectable elements. The district court then examined the numerous differences between the two plans. See Dk. 57 at 10-12. As in Home Design Services and Intervest, these differences are differences in dimensions, wall placement, and the presence, arrangement, and function of particular features around the house. The differences described by the district court in the instant case are comparable to those described in Home Design Services and Intervest. In other words, the potentially protectable elements of the two designs are different, not similar. Accordingly, at the level of protectable elements, there is no genuine question of material fact that an average lay observer would recognize the Lesher Plan as having been appropriated from the Amalfi.

In light of our precedent in Home Design Services and Intervest, and based on our careful review of the briefs and the record, we agree with the district court. Appellants have not shown that there is a genuine question of fact as to substantial similarity. The district court's grant of summary judgment to Defendants-Appellees is affirmed.

AFFIRMED.