Orrin Monroe CORWIN, as sole heir and personal representative of the Estate of Mark E. Waters II, Plaintiff–Appellant,

v.

WALT DISNEY COMPANY, a Delaware corporation, Walt Disney World Company, a Florida corporation, Defendants–Appellees,

Nos. 04–16554, 05–12869.

United States Court of Appeals, Eleventh Circuit.

Nov. 2, 2006.

S. Tracy Long, Silverman Santucci, LLP, Ft. Lauderdale, FL, Philip Andrew Duvalsaint, Delray Beach, FL, for Corwin.

James Vincent Etscorn, Edgar E. Stanton, IV, Robert W. Thielhelm, Jr., Baker & Hostetler, LLP, Orlando, FL, Louis M. Meisinger, Martin D. Katz, Sheppard, Mullin, Richter & Hampton, Los Angeles, CA, for Defendants–Appellees.

Before EDMONDSON, Chief Judge, and BIRCH and ALARCON,* Circuit Judges.

BIRCH, Circuit Judge:

Plaintiff-appellant, Orrin Monroe Corwin, appeals (1) a 12 November 2004 order disposing of several evidentiary issues and granting summary judgment in favor of defendant-appellee, Walt Disney World Company ("WorldCo" or "Disney" for its precursor); (2) a 28 April 2005 order denying Corwin's motion for clarification and reconsideration; and (3) a 9 May 2005 order adopting the report and recommendation of the United States magistrate judge awarding taxable costs to WorldCo. Since we find that Corwin has failed to raise a genuine issue of material fact as to either WorldCo's access to Mark Water's rendering of a theme park concept entitled "Miniature Worlds" or as to striking similarity between that rendering and EPCOT (Experimental Prototype City of Tomorrow), we AFFIRM as to summary judgment and the motion to reconsider. Because the district court awarded costs that it lacked discretion to award, we VACATE the order on costs, and REMAND for proceedings consistent with this opinion.

## I. BACKGROUND

This appeal arises out of a copyright infringement suit filed by Corwin against WorldCo.[1] Corwin is the former neighbor of Mark Waters II and the sole heir to his estate. Corwin asserts that Waters, while living in Hawaii in the 1960s, painted a rendering of a concept for an international theme park in miniature ("Miniature Worlds Painting" or "Painting"). Waters allegedly did so at the request of Robert Jaffray, who had conceived of the idea after viewing miniature villages elsewhere, particularly in Britain. Jaffray's concept entailed cities, villages, and landscapes representing nineteen nations from six

---

* Honorable Arthur L. Alarcon, United States Circuit Judge for the Ninth Circuit, sitting by designation.

1. Although the Walt Disney Company was also originally named in this suit, it was dismissed for lack of personal jurisdiction in April 2003.

continents. It included animals, buildings, landscaping, and human figures carved from wood. For each nation represented, the model had representations of places of particular historical or geographical interest including recognizable structures such as the Roman Coliseum or London's Big Ben. Everything was to be in miniature. Shortly after the Painting was completed, the Jaffrays left Hawaii. Jaffray did not keep in touch with Waters.

Corwin asserts that Jaffray attempted to take his theme park concept to Walt Disney in the 1960s, and that he took the Painting and a presentation of the concept to a meeting with a Disney representative in 1962 or 1963, but later received a rejection letter. WorldCo denies such a meeting occurred.

Corwin alleges that EPCOT, which was opened by WorldCo in 1982, was copied from Waters's illustration of Jaffray's concept. He particularly notes a similarity between the Painting and a 1981 Hall/Scifo rendering of EPCOT. Waters allegedly painted the Miniature Worlds Painting as a freelance artist and retained his ownership of the copyright interest. Corwin, who only recently found out about his inherited interest in the Painting and the claim, registered the copyright in 2002 and sued WorldCo for copyright infringement shortly thereafter. Specifically, he alleges that WorldCo infringed upon his exclusive rights to reproduce the Painting, to prepare derivative works of the Painting, to distribute copies of the Painting, to display the Painting, and to attribution of the Painting pursuant to 17 U.S.C. §§ 106(1), (2), (3), and (5), 106A(a)(1)(A), and 113.

## A. *Access Evidence*

In support of his assertions regarding Disney's access to the Painting, Corwin has produced the testimony of Waters's former wife, Jaffray's widow, and Jaffray's daughters. He also has produced two letters and two notes.

Waters's former wife, Ellen Pauline Waters, denied any knowledge of the Miniature Worlds Painting in particular prior to having seen a story about it in a Toledo, Ohio newspaper in 2000. R15–171 at 14–16, 20. She said that Waters had not discussed the Jaffrays in detail but that he had told her that he was doing work for Jaffray. *Id.* at 18, 25. She also reported that Waters had talked to her about the Miniature Worlds project, which she understood was to be located outside Washington, D.C. *Id.* at 15.

Marian Jaffray, Jaffray's widow, testified that she believed Jaffray had met with a representative of Disney in 1962 or 1963. R15–173 at 24. She also testified that Jaffray ultimately received a rejection letter. *Id.* at 35–36. Marian Jaffray was not at the alleged meeting and conceded that she did not know what Jaffray had taken with him to that meeting but "just assumed" that he took the "total picture of his plans." *Id.* at 103–04. She was unable to produce the rejection letter. *Id.* at 36.

Jaffray's daughter, Patricia Jaffray Jones, testified that she remembered picking her father up at a train station after an alleged meeting with Disney. R12–165 at 35–36. She speculated that Disney did not return the materials Jaffray had used in his presentation at the alleged meeting until a couple of months thereafter. *Id.* at 137–38. She could not personally confirm the presence of the Painting among these materials, however,nor did she attend the alleged meeting herself. *Id.* at 108, 112. Jones also testified that, when her father viewed a depiction of EPCOT sent to him by mail in 1980, she heard him say, "Oh,

my god, they built it .... I left everything with them .... They must have photographed and copied everything. No wonder they kept it for a month." R12–165 at 140. Jones testified that in connection with this statement, Jaffray specifically mentioned blueprints, his site map, and "the drawings." *Id.*

As for the documentary evidence, the first letter, dated 10 May 1963, is from Jaffray to Joseph P. Reddy, Director of Public Relations at Disney. In the letter, which apparently renews an already rebuffed offer to bring his idea to Disney, Jaffray expresses his understanding that Walt Disney "has his hands completely full and cannot consider new projects at this time." R17–198, Exh. 4. A 27 May note from Reddy to William Cottrell, one of Disney's upper level executives, inquires, "Is there anything we can do on this?" *Id.*, Exh. 5. It is unclear from the record, however, to what the note refers. Finally, a letter dated 6 June 1963 from Reddy to Jaffray states that Disney is "only designing the Exhibits" for the World's Fair and that "Ford and General Electric let the contracts for manufacturing the miniatures and the actual buildings." *Id.*, Exh. 6. Reddy informed Jaffray that the "new projects for Disneyland are already in work for the next few years" and concluded the letter by expressing regret that he could be of "no more help to [Jaffray]." *Id.*

The final note comes from the period of time during which WorldCo was developing EPCOT. Martin Sklar, one of the leaders of the EPCOT design team, apparently during a meeting, drew an arrow on a piece of paper. The arrow runs from left to right and to the left of it is written "Miniature World" and "Micro Miniature World." *Id.*, Exh. 7. To the right of the arrow is written "Cat = 'Route to the

Future.'" *Id.* At the top of the same page is another set of notes referring again to "the Cat" as well as to "'Our Town' Narrator" and "Rabbit." *Id.* Sklar testified that he does not remember what he was thinking about when he made these notes. *Id.*, Exh. 14 at 176.

### B. *Expert Witnesses*

As the litigation progressed, the district court set a final discovery cut-off in April 2004, with expert witness disclosures due from Corwin in June 2004. Corwin timely disclosed the reports of four experts: Thomas Colbert, Robert Rydell, Peter Alexander, and Frank Constantino.

#### 1. *Colbert*

The expert report of Thomas Colbert introduces itself as a comparison of "Basic Concepts, Program, and Design" between the "Waters proposal for Miniature Worlds and EPCOT as it was finally built." R6–152, Exh. 1 at 2. Colbert proceeds by listing similarities in programmatic design elements, site design elements, and building design elements. He asserts that "basic functional relationships between major elements of both projects are described by the exact same bubble diagram." *Id.* at 3. He concludes that "EPCOT as finally built bears a striking similarity to the graphic expression of Miniature Worlds as prepared by Mr. Waters." *Id.* at 5. He notes specifically that

> [a]t every level, from the basic concept and basic organization, to the way nationally themed pavilions are arranged around a vast lake while being visually and functionally separated by landscaped, wooded areas with plantings indigenous to the nations under consideration to the way the artistic renderings

are composed with landscaped access to parking on the lower left hand side and festive lake on the upper righthand side these two projects are the same.

*Id.* Finally, although he concedes that "there are dissimilarities between the projects," he asserts that "the core *idea* is in fact the same." *Id.* (emphasis added). Colbert asserts that "the exact combination and arrangement of elements which Waters proposed was unique and had never before been proposed." *Id.* at 7. He similarly concludes that "Mark Waters['s] design for Miniature Worlds was the source of the fundamental conception behind EPCOT in its final built form" and that the Waters Painting is "highly original." *Id.*

## 2. Rydell

The report of Robert Rydell compares the Waters Painting and EPCOT in light of scholarly literature on the history of World's Fairs, theme parks, and amusement parks. The report lists common elements such as globes, ampitheatres, landforms, railroads and boats, national representations, a United States pavilion, horticulture, landscaping and overall plan, globalization, and lakes. R6–152, Exh. 2 at unnumbered 1–2. The report next observes that most of these elements were commonly seen at World's Fairs prior to the development of either the Painting or EPCOT. *Id.* at unnumbered 2–3. The report catalogs some similarities in placement of elements between the Painting and EPCOT but generally does not describe the placement of such elements in World's Fairs. The report also includes a long section on the development and history of World's Fairs and theme parks. Finally, it concludes that

[t]he arrangement of individual elements at EPCOT was neither coincidental nor

happenstance. While individual elements in the EPCOT design may have been inspired by World's [F]airs, the arrangement of these modules into a thematic whole appears to have been strongly influenced by Mark Waters['s] Miniature Worlds [P]ainting.

*Id.* at unnumbered 8. The report does not describe any specific expression or expressive effect of the arrangement of elements.

## 3. Alexander

The expert report of Peter Alexander, who was Director of Project Management Support at Walt Disney Productions during the EPCOT project, begins with an exposition on the organizational principles underlying various categories of theme parks. R6–152, Exh. 3 at unnumbered 2–3. The report then offers a lengthy discussion of the development of EPCOT based upon a book on the topic written by Steve Mannheim and also upon Alexander's own experience at Disney. *Id.* at unnumbered 3. The "Findings of the Study" section lists a series of common ideas contained in the Painting and EPCOT. On this basis, Alexander concludes that there is a "striking similarity between Mar[k] Waters['s] painting of Col. Jaffray's Miniature World and Disney's EPCOT." *Id.* at unnumbered 7.

In his report, Alexander also asserts that there is no transition or development from one idea to the next in the EPCOT project and that the document production in the case has failed to uncover any intermediate steps that would explain the evolution of design or form. Accordingly, he concludes that EPCOT, as it has been built, did not evolve from Walt Disney's original vision of a City of Tomorrow. *Id.* at unnumbered 6.

## 4. Constantino

Finally, the report of Frank M. Constantino is much briefer and includes several

disclaimers clarifying that the report was not made in light of any "assessment of any elements depicted in both drawings which may be in the public domain." R6–152, Exh. 4 at 1. This report also includes a list of common elements, but, apart from noting the placement of the globe and the entry pavilion structure, it does not describe or discuss how each element is used in either the Painting or the park. The report concludes that "[d]espite the documented span of nearly twenty years between the original drawing and possible replicate illustration(s) during that period, the two images do indeed bear a substantially similar appearance to each other." *Id.* at 2.

### C. Independent Creation

WorldCo has produced evidence of the independent creation of EPCOT in the form of the affidavit and other testimony of Martin Sklar, currently Vice Chairman and Principal Creative Executive at Walt Disney Imagineering, one of the two men responsible for overseeing its design, planning, and construction. According to Sklar, Disney's idea for an international-themed attraction arose from a concept called International Street, a cluster of buildings, including restaurants and shops, designed to feature other countries and cultures. R8–158, Exh. 5 ¶¶ 8. Sklar explained that Dick Irvine and Bill Cottrell, both Disney executives, drafted memos outlining this concept in 1956, long before the alleged meeting between Jaffray and Disney. *Id.* ¶ 9. After Disney's participation in the 1964 World's Fair, the concept expanded into an international park with architectural pavilions, water, and pedestrian and boat access. Eventually, this concept merged with the evolved version of Walt Disney's original vision of a "City of Tomorrow." *Id.* ¶ 10. Disney's City of Tomorrow concept had been intended to showcase emerging technology and was originally to feature a centerpiece hotel with shops, covered streets, residential developments, and office buildings radiating out from it. R17–198, Exh. 14 at 41; *Id.*, Exh. 16 at 13–14. Sklar also noted that many of the design elements incorporated into EPCOT had been featured at various World's Fairs held between 1867 and 1967—particularly the use of a globe as a major icon. R8–158, Exh. 5 ¶¶ 13–14.

### D. Summary Judgment and Other Motions Activity

WorldCo filed a *Daubert*[2] motion to exclude portions of Corwin's experts' reports, then filed a motion for summary judgment. In response to the motion for summary judgment, Corwin submitted, among other things, new affidavits from his four experts. Corwin claims that these affidavits merely redacted the portions of the original reports no longer applicable after dismissal of the trade secret claims. WorldCo filed a motion to strike certain of Corwin's evidence filed in opposition to the motion for summary judgment—particularly the new affidavits and certain of the testimony concerning Disney's access to the Painting.

On 12 November 2004, the district court granted the *Daubert* motion to strike portions of Corwin's four initial expert reports on the grounds that (1) those portions utilized improper methodology by impermissibly comparing ideas in the Painting

---

**2.** *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

and EPCOT rendering and failing to compare expressive or protectable elements; and (2) the reports contained lists of similarities that are inherently subjective and unreliable.[3] The court granted the motion to strike the new affidavits on the ground that they were untimely filed. It also refused to admit the testimony of either Marian Jaffray or Patricia Jaffray Jones regarding Jaffray's alleged meeting with Disney or what he might have taken to such a meeting on the grounds that it was not based on personal knowledge and, thus, constituted inadmissible hearsay. The court also specifically found that Jones's report of her father's exclamation upon receiving notice of EPCOT was not protected by the excited utterance exception to the hearsay rule because Corwin (1) cited no case law to support his proposition that reading a letter and newspaper article constitutes a startling occasion for the purposes of this exception and (2) failed to produce "any admissible evidence demonstrating that Jaffray had firsthand knowledge that the Miniature Worlds painting was left with [Disney]." R20–229 at 35.

In the same order, the court granted the motion for summary judgment in favor of WorldCo. The court first found that Waters's copyright interest in the Painting was valid, giving Corwin standing to sue, and that Corwin had at least raised a genuine issue of material fact as to whether Waters's "selection as to how the castles and villages were arranged in the painting, the colors associated with the elements, and the overall structure and arrangement of the underlying ideas" was original enough to be afforded protection against infringement. *Id.* at 31–33.

The court then reasoned, however, that, because it had found that Corwin had failed to produce any admissible evidence demonstrating access or even an inference of access,[4] Corwin would have to show striking similarity in order to prevail on his infringement claims. The court found, in comparing the Miniature Worlds Painting with the 1981 Hall/Scifo rendering of EPCOT "[a]t the level of protectable expression," that there was no genuine issue of material fact as to whether the two works are strikingly similar.[5] *Id.* at 38. The court also observed that, even if there had been such a genuine issue of material fact, "overwhelming, uncontroverted evidence that [WorldCo] independently created the EPCOT rendering" supports summary judgment in favor of WorldCo. *Id.* at 40–41.

### E. *Motion for Reconsideration*

Corwin filed motions for reconsideration and clarification, which were considered as

---

3. The court struck §§ I–VI of the Colbert report, the entire Rydell report, the "Findings of the Study" section of the Alexander report, and the entire Constantino report. R20–229 at 15–18.

4. The court specifically rejected Corwin's argument that WorldCo designed EPCOT with sufficiently unusual speed to create an inference of access on the ground that Corwin had failed to show that the time period in which WorldCo created EPCOT was unusually short by comparison to industry standards.

5. In coming to this conclusion, the court noted differences in (1) both the appearance and the situation of the globe, (2) the level of detail of depicted villages, (3) the location of pavilions in relation to the water, (4) several structures that exist in the EPCOT rendering but not in the Waters Painting, and (5) the nature and route of the railroad. R20–229 at 38. Finally, the court noted the difference in scale—EPCOT, for the most part, is life size, but the Waters Painting depicts human figures on a significantly larger scale than park attractions. *Id.* at 39.

a single motion for reconsideration. In a 52–page order, addressing each of Corwin's arguments in light of 255 separate exhibits that had not been previously part of the record, the court denied the motions for reconsideration and clarification on the grounds that Corwin had "not pointed to new evidence or case law that create[d] a triable issue of fact on any matter before the Court" and "[b]ecause there [was] no clear error or manifest injustice." R26–288 at 52.

### F. Costs

On 6 December 2004, WorldCo filed both a bill of costs and an application for attorneys fees and costs. On 7 December 2005, the clerk taxed costs in favor of WorldCo in the full requested amount of $171,197.59. R24–238. The application for fees and costs was referred to a magistrate judge. In January, after issuing a report and recommendation ("R&R") as to this application, the initial magistrate judge recused herself, and the motion was transferred to a second magistrate judge. The second magistrate judge issued an R&R on 18 January 2005 denying the application for costs as moot because it was duplicative of the costs already taxed by the clerk and denying the application for attorneys fees without prejudice to refiling "at the completion of the appellate process."[6] R25–270 at 2. WorldCo objected to the recommendation that attorneys fees be denied. Although Corwin responded to this with a reply brief in support of the recommendation to deny attorneys fees, he never filed any objection or otherwise addressed the portion of the report dealing

with costs. The district court adopted the R&R in full on 9 May 2005. On 19 May, Corwin filed a motion for leave to object to the bill of costs and an objection to the taxation of costs. The motion for leave was denied on 11 August 2005 on the grounds that it was untimely and lacked any showing of excusable neglect.

On appeal, Corwin argues that (1) the district court wrongfully excluded testimony of Waters's former wife and Jaffray's widow and daughter, "weigh[ing] the evidence in the guise of excluding virtually all of appellant's evidence, thus creating the appearance of an absence of triable facts," Appellant's Br. at 4, (2) the district court wrongfully excluded the reports of his experts in failing to conduct a *Daubert* hearing and by employing "the wrong standard for substantial similarity under copyright law," *Id.* at 5; (3) because of the first contested rulings the above and the application of incorrect standards with regard to access, the district court erred in granting summary judgment in favor of WorldCo; and (4) Corwin had demonstrated excusable neglect for his failure timely to object to the taxation of costs, and even if he had not, the district court's improper taxation ought to be reviewed on the merits.

## II. DISCUSSION

We review the granting of a motion for summary judgment *de novo*. *Rojas v. Florida*, 285 F.3d 1339, 1341 (11th Cir. 2002) (per curiam). Because this review necessarily will rely on all admissible evidence contained in the record, we first address Corwin's challenges to the district court's evidentiary rulings.

---

**6.** The first R&R had similarly concluded that the motion for costs was "redundant." R25–262 at 1. It also instructed Corwin that, to contest the clerk's taxation, he would need to

file an objection as provided by the Federal Rules. *Id.* at 2. The second R&R did not contain a similar instruction. *See* R25–270.

## A. *Excluded Evidence*

■ We review for abuse of discretion a district court's ruling on admissibility of evidence. *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 556 (11th Cir. 1998). "[W]hen employing an abuse of discretion standard, we will leave undisturbed a district court's ruling unless we find that the district court has made a clear error of judgment, or has applied the wrong legal standard." *Guideone Elite Ins. Co. v. Old Cutler Presbyterian Church, Inc.*, 420 F.3d 1317, 1325 (11th Cir.2005).

■ Further, "[e]vidence inadmissible at trial cannot be used to avoid summary judgment." *Broadway v. City of Montgomery, Ala.*, 530 F.2d 657, 661 (5th Cir. 1976). "Even on summary judgment, a court is not obligated to take as true testimony that is not based upon personal knowledge." *Citizens Concerned About Our Children v. School Bd. of Broward County, Fla.*, 193 F.3d 1285, 1295 n. 11 (11th Cir.1999) (per curiam).

### 1. *Testimony About Access*

■ Corwin complains that the district court improperly excluded his evidence prior to consideration of the summary judgment motion, when, taken all together, that evidence would have allowed inferences to be drawn that Disney had access to the Painting in the early 1960s. The court excluded the testimony of Waters's former wife on the ground that, based as it was upon conversations with Waters, it "constitute[d] hearsay and speculation." R20–229 at 3. Ellen Waters has asserted

no direct personal knowledge of the painting or the transaction between Waters and Jaffray. The court similarly found the testimony of both Marian Jaffray and Patricia Jaffray Jones to be inadmissible because it was not based on personal knowledge and therefore, was, speculative. *Id.* at 4, 5. Neither woman claims to have been at the alleged meeting between Jaffray and any Disney representative nor personal knowledge of what materials Jaffray took with him to any such alleged meeting. Because a court is not required to accept as true testimony that is not based on personal knowledge and because none of this excluded testimony was based on personal knowledge, the district court did not abuse its discretion in disregarding this testimony.[7] *Citizens Concerned About Our Children*, 193 F.3d at 1295 n. 11.

### 2. *Expert Witness Reports and Affidavits*

#### a. Initial Reports

■ We also review a district court's exclusion of expert reports for abuse of discretion. *Cook v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1107 (11th Cir.2005). As the district court observed "[t]he Federal Rules of Evidence permit experts to offer their informed opinions on technical matters outside the scope of what is presumed to be a jury's ordinary knowledge." R20–229 at 10 (citing Fed.R.Evid. 702). The court serves as a gatekeeper, charged with screening out experts whose methods are untrustworthy or whose expertise is irrelevant to the issue at hand. *See Daubert v. Merrell Dow Pharms., Inc.*,

---

7. Corwin asserts that the district court's analysis effectively required him to prove access to each piece of evidence for it to be admitted. In fact, the court required only that each piece of evidence be proved by competent testimony rather that by speculation or hearsay.

509 U.S. 579, 590–93, 113 S.Ct. 2786, 2795–97, 125 L.Ed.2d 469 (1993). For expert testimony to be admissible under Rule 702,

> the proponent of the testimony must show that:(1) the expert is qualified to testify competently regarding matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Maiz v. Virani,* 253 F.3d 641, 665 (11th Cir.2001).

■ There is no dispute that the four experts in question were qualified to testify competently regarding matters they intended to address. Rather, the court excluded the expert reports on the grounds that they were based upon improper methodology and failed to assist the trier of fact. Ideas, as opposed to expression of those ideas, are not protected by copyright law. *Herzog v. Castle Rock Entm't,* 193 F.3d 1241, 1248 (11th Cir.1999) (per curiam) ("well-reasoned" district court opinion affirmed and annexed to Eleventh Circuit ruling). Thus, if an expert relies on uncopyrightable ideas rather than on expression of those ideas in analyzing alleged copyright infringement the report is excludable. *See Rice v. Fox Broad. Co.,* 330 F.3d 1170, 1180 (9th Cir. 2003).

■ Similarly, *scenes a faire,* which include "[i]ncidents, characters, or settings that are indispensable or standard in the treatment of a given topic[,] are not copyrightable." *Herzog,* 193 F.3d at 1248; *see also, e.g., Walker v. Time*

*Life Films, Inc.,* 784 F.2d 44, 50 (2d Cir.) (observing that there is no protection for common elements in police fiction, such as "drunks, prostitutes, vermin and derelict cars" and "foot chases and the morale problems of policemen, not to mention the familiar figure of the Irish cop"); *Evans v. Wallace Berrie & Co.,* 681 F.Supp. 813, 817 (S.D.Fla.1988) ("Such similarities as using a sand dollar as currency, foods made of seaweed, seahorses for transportation and plates made of oysters or mother of pearl are not protected similarities of expression, but are more accurately characterizations that naturally follow from the common theme of an underwater civilization."). Thus, if an expert relies solely upon *scenes a faire* or other stock elements not protected by copyright, the report is excludable. Further, lists of similarities are "inherently subjective and unreliable, particularly where the lists contain random similarities, and many such similarities could be found in very dissimilar works." *Herzog,* 193 F.3d at 1257; *see also Beal v. Paramount Pictures Corp.,* 20 F.3d 454, 460 (11th Cir. 1994).

■ As the district court noted in its order, however, a work may be protected by copyright law when its otherwise unprotectable elements are arranged in a unique way. *See Rogers v. Koons,* 960 F.2d 301, 307 (2d Cir.1992) (observing that the arrangement of puppies in a photograph may constitute a protectable element); *Roulo v. Russ Berrie & Co.,* 886 F.2d 931, 939 (7th Cir.1989) (observing that, although size of greeting cards, color of paper, ink, border designs, general concept of stripes, ellipses and single-side format are not individually protectable, "it is the unique combination of these common elements which form[s] the copyrighted

material").[8]

In this case, all four expert reports focus on the concepts and ideas behind the Painting and EPCOT rather than on the expression of those concepts and ideas. Each report also incorporates a list of common elements. As the district court observed with regard to the reports of Colbert, Rydell, and Alexander, although each compares ideas conveyed and similarities in the placement of elements in the Painting and the rendering of EPCOT, each also "fails to delve into the expressive aspects of these ideas." R20–229 at 17. The report of Constantino does not even go so far as to describe the placement of most elements in each work, much less compare the expression thereof. Because neither the ideas nor the placement of stock elements is copyright protectable absent a showing that they thereby constituted expression of ideas, the district court did not abuse its discretion in excluding all portions of the reports based on them.

### b. Supplemental Affidavits and Report

The Federal Rules of Civil Procedure provide that a trial court may set a deadline for expert disclosures. Fed.R.Civ.P. 26(a)(2)(C). We have held that a supplemental expert report may be excluded pursuant to Federal Rule of Civil Procedure 37(c) if a party fails to file it prior to the deadline imposed. *Williamson Oil Co. v. Philip Morris USA,* 346 F.3d 1287, 1323 (11th Cir.2003).

In this case, the court set a deadline of 1 June 2004 for disclosure of Corwin's expert reports and a deadline of 15 October 2004 for financial expert reports. The affidavits, which appear both to restructure and to supplement the prior expert reports but address no financial issues whatsoever, were filed on 5 October. Although Alexander's supplemental report does address the financial impact of EPCOT on Walt Disney World, it was not filed until 19 October. Accordingly, the affidavits and report were untimely filed. Additionally, as the district court noted, even if the affidavits and supplemental report contained nothing new, the underlying methodology comparing concepts and ideas is the same and thus, also would be excludable under *Daubert.*[9] Either way, the district court did not abuse its discretion in excluding them.[10]

### 3. Excited Utterance

Corwin also argues that the district court improperly excluded the testimony

---

**8.** We also have recognized that a selection, arrangement, or organization of facts is copyrightable as a compilation if sufficiently original. *See MiTek Holdings, Inc. v. Arce Eng'g Co.,* 89 F.3d 1548, 1558 (11th Cir.1996). Because, § 101 of the Copyright Act of 1976 defines a compilation as "a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship," we conclude that the Painting is not appropriately analyzed as a compilation. 17 U.S.C. § 101.

**9.** For instance, Colbert states that "another major commonality of these projects is the underlying poetic and symbolic structure that they embody. This poetic and symbolic condition sets the people and traditions of the world on a path toward future harmony through technology." Exh.2 at 8. Colbert never shows how the Painting and the rendering of EPCOT, or the park itself similarly express this concept or goal.

**10.** Although Corwin argues that the district court erred in failing to conduct a *Daubert* hearing before excluding the affidavits, Corwin did not request a hearing at the time and, although they are often helpful, hearings are not required for to such determinations under the Federal Rules or established law. *See City of Tuscaloosa,* 158 F.3d at 565 n. 21.

of Patricia Jaffray Jones regarding her father's reaction to receiving a letter containing a newspaper clipping about EPCOT. He asserts that the reaction is admissible under the excited utterance exception to the hearsay rule. Federal Rule of Evidence 803(2) provides an exception to the general inadmissibility of hearsay for "[a] statement relating to a startling event or condition made while the declarant was under stress of excitement caused by the event or condition."

It is unnecessary that we reach the issue of whether the district court abused its discretion on the excited utterance issue because the statement provides no specific evidence that Disney had actual access to the Painting.

### B. *Summary Judgment*

As noted, we review the grant of a motion for summary judgment *de novo*. *Rojas*, 285 F.3d at 1341. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "To survive [a] motion for summary judgment, [the nonmoving party] must establish that there is a genuine issue" for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986).

■■■■■ To establish copyright infringement, "a plaintiff must prove (1)[its]

ownership of the copyright and (2) 'copying' by the defendant or person who composed the defendant's work." *Ferguson v. NBC*, 584 F.2d 111, 113 (5th Cir.1978). To demonstrate copying, a plaintiff must show "that the person who composed the defendant's work had access to the copyrighted material and that there is substantial similarity between the two works." *Herzog*, 193 F.3d at 1249. Access requires proof of "a reasonable opportunity to view" the work in question. *Id.; see also Ferguson*, 584 F.2d at 113.

### 1. *Access*

■■■■ Corwin has offered no evidence to demonstrate that Disney had access to the Painting. Even if the excited utterance were admissible, it contains no reference to the Painting, and there is no other admissible evidence that the Painting was included in the materials Jaffray took with him to the alleged meeting. Also, Jaffrey's correspondence with Reddy and the note written by Sklar provide no indication that Disney ever had access to the Painting. Accordingly, we conclude that the evidence offered by Corwin is insufficient to raise a genuine issue of material fact as to access.

### 2. *Striking Similarity*

■■■■ "Where a plaintiff cannot demonstrate access he may, nonetheless, establish copying by demonstrating that his original work and the putative infringing work are strikingly similar."[11] *Calhoun v. Lillenas Publ'g*, 298 F.3d 1228, 1232 n. 6

---

11. Corwin also argues that the substantial similarity standard, rather than the striking similarity standard, is the proper standard even without evidence of access. He cites *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210 (11th Cir.2000), in support of this proposition.

In that case, we did state that "no matter how the copying is proved, the plaintiff also must establish specifically that the allegedly infringing work is substantially similar to the plaintiff's work with regard to its protected elements." *Id.* at 1214 (emphasis omitted).

(11th Cir.2002) (per curiam) (citing *Herzog*, 193 F.3d at 1249; *Benson v. Coca–Cola Co.*, 795 F.2d 973, 975 n. 2 (11th Cir.1986) (per curiam); *Ferguson*, 584 F.2d at 113). Striking similarity exists where the proof of similarity in appearance is "so striking that the possibilities of independent creation, coincidence and prior common source are, as a practical matter, precluded." *Selle v. Gibb*, 741 F.2d 896, 901 (7th Cir.1984); *see also* M. Nimmer & D. Nimmer, 4 Nimmer on Copyright § 13.02[B] (2005).

■ First, as explained, the expert reports opining as to the "striking similarity" between the Painting and EPCOT properly were excluded by the district court. Of those portions of the reports that remain, none properly supports any assertion of striking similarity.[12] Although both discuss similar arrangement of otherwise unprotectable elements, neither expert explains the originality of the Waters arrangement of elements or explains how, precisely, the expressive effect of Waters's arrangement is duplicated by either EPCOT or the rendering of it.

■ Second, WorldCo presented evidence of independent creation by tracing the development of EPCOT from the ideas for International Street and City of Tomorrow, through Disney's participation in the 1964 World's Fair into what it had become by the time it opened. Corwin attempts to rebut WorldCo's evidence of independent creation with both Alexander's testimony as to the absence of a coherent development in EPCOT's design and with his argument that EPCOT was designed with suspiciously unusual speed.[13] As the district court noted, however, both approaches are merely speculative and neither is supported by the record. The record contains many drawings and much correspondence related to the development of the 1964 World's Fair exhibits, the International Street concept, and the designs for the combination of the international and futuristic theme parks. Alexander's conclusory statements regarding independent creation are insufficient to raise a genuine issue of material fact as to this issue.

Accordingly, in the face of WorldCo's evidence of independent creation, of the comparisons to World's Fair concepts and designs, and of the significant differences between the two manifestations—the appearance of the globe, the level of detail in the villages, the location of pavilions in relation to the lake, the presence of several elements at EPCOT not present in the Painting, the route and nature of the rail system, and the overall scale of the park— we conclude that Corwin has failed to raise

When examined in context, however, *Leigh* appears here to have used the word "copying" in place of "access." This is further demonstrated by the fact that the higher "striking similarity" standard, for cases lacking evidence of access, has been employed in Eleventh Circuit cases both before and after *Leigh*. *See Ferguson*, 584 F.2d at 113; *Calhoun*, 298 F.3d at 1232 n. 6.

12. The remainder of Colbert's report addresses Waters's creative contribution to Jaffray's overall concept, his authorship of the Painting and other graphics, and the Painting's origi-

nality, and then concludes that the Painting was "the source of the fundamental conception behind EPCOT in its final built form." R6–152, Exh. 1 at 7. The remainder of Alexander's report analyzes EPCOT as a theme park and discusses its creation but fails to discuss the Painting in any way, or to analyze expression of any common elements in the Painting and EPCOT.

13. *See supra* note 4.

a genuine issue of material fact as to striking similarity. Accordingly, the district court did not err in granting summary judgment in favor of WorldCo.

## C. *Motion for Reconsideration*

■ We review a district court's denial of a motion for reconsideration for abuse of discretion. *Cliff v. Payco Gen. Am. Credits, Inc.*, 363 F.3d 1113, 1121 (11th Cir.2004). Because we find that the record supports the grant of summary judgment, the district court did not abuse its discretion in denying the motions for reconsideration and clarification.

## D. *Costs*

■ Although he concedes that his objection to costs was filed after the deadline set by the Federal Rules, Corwin challenges the district court's taxation of costs against him by first arguing that he sufficiently showed excusable neglect. More specifically, he contends that, although he understood the deadline set by Federal Rule of Civil Procedure 54, he believed the filings related to the costs and fees motions tolled it, at least until the magistrate judge made an R&R and perhaps until the district court adopted that R&R. He further argues that, regardless of whether he is able to show excusable neglect, the taxation of costs ought to be reviewed on the merits. A costs award is reviewed for abuse of discretion as is a district court's determination regarding excusable neglect. *See Int'l Ass'n of Machinists & Aerospace Workers, Dist. 776 v. Texas Steel Co.*, 538 F.2d 1116, 1121–22 (5th Cir.1976) (costs award); *Kinnear–Weed Corp. v. Humble*

*Oil & Ref. Co.*, 441 F.2d 631, 636–37 (5th Cir.1971) (same); *Advanced Estimating Sys., Inc. v. Riney*, 130 F.3d 996, 997 (11th Cir.1997) (excusable neglect).

■ The Federal Rules of Civil Procedure provide that after costs are taxed by the clerk, an objection may be made only "on motion served within 5 days thereafter." Fed.R.Civ.P. 54(d)(1). Although this deadline is not considered jurisdictional in our circuit,[14] it is still fully within the discretion of the district court to decline to review an untimely objection to costs. *See Sayers v. Stewart Sleep Center, Inc.*, 140 F.3d 1351, 1354 (11th Cir.1998) (holding a district court "acted within its discretion in declining to consider [an] opposing memorandum" to taxation of costs that was filed untimely). Further, we have held that "counsel's misunderstanding of the law cannot constitute excusable neglect." *Advanced Estimating Sys.*, 130 F.3d at 999.

■ On the other hand, because the filing deadline set by Rule 54 is not jurisdictional, we may review the taxation of costs on the merits, even after the district court has denied review based on the untimely filing of objections. *See Baum v. United States*, 432 F.2d 85, 86 (5th Cir. 1970) (per curiam); *see also Soberay Mach. & Equip. Co. v. MRF Ltd.*, 181 F.3d 759, 770 (6th Cir.1999) ("[B]ecause it has been found that an untimely motion to review under Rule 54(d) may properly be entertained, in that the time limit is not jurisdictional, and because we believe that the district court abused its discretion in taxing costs, we will address the substance of Plaintiff's motion."). Accordingly, in this case, although the objection to costs

14. There is a split among the circuits as to whether this deadline is jurisdictional, but we have found it not to be so. *See Baum v.*

*United States*, 432 F.2d 85, 86 (5th Cir.1970) (per curiam).

was untimely filed and although the district court did not abuse its discretion in refusing to find excusable neglect where Corwin claimed to have been confused about the deadline clearly set out by Federal Rule but still failed to file within five days of the latest date he suggests the period for objections ought to begin,[15] we nonetheless review whether the court abused its discretion in taxing certain costs against Corwin.

■ The Supreme Court has clarified that, absent specific statutory authorization for recovery of additional expenses, district courts are limited in taxing costs against the losing party in federal litigation by Federal Rule of Civil Procedure 54(d) and 28 U.S.C. § 1920. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445, 107 S.Ct. 2494, 2499, 96 L.Ed.2d 385 (1987). The Court explained that the discretion given by Rule 54(d) "is solely a power to decline to tax, as costs, the items enumerated in § 1920." *Id.* at 442, 107 S.Ct. at 2498. There are six categories of allowable expenses: fees of the court clerk and marshal; fees of the court reporter; printing fees and witness fees; copying fees; certain docket fees; and fees of court-appointed experts and interpreters. 28 U.S.C. § 1920. The provision for taxation of expenses and fees related to witnesses in 28 U.S.C. § 1920 is, in turn, further limited by 28 U.S.C. § 1821, which allows no more than $40 per day for witness fees. That section also governs the taxation of witnesses' travel expenses.

■ Under the category in the bill of costs for "Fees for Witnesses," WorldCo claims no witness fee over $40, and all other claimed witness-related expenses in that category are covered by the appropriate statutes. *See* R23–236, Itemized Schedule at 3. Under the category "Other Costs—Experts," however, WorldCo lists $35,768.75 related to "services rendered" by Wyatt and Gorman. *Id.* at 7. These entries make no reference to the $40 statutory limit, and they do not fit under any other statutory category of taxable costs.

■ WorldCo has also listed $25,465.12 in travel expenses for various attorneys and paralegals. *Id.* at 7–8. The case cited by WorldCo in support of such expenses, which are not provided by statute, supports the taxing of travel expenses only for witnesses, not for attorneys. *See Bolt v. Halifax Hosp. Med. Center*, 1984 U.S. Dist. LEXIS 24414, *14–17 (M.D.Fla. Aug. 11, 1984). There is no other statute or case law to support for the taxation of attorneys' travel expenses as costs.

■ Finally, WorldCo has listed $60,081.13 under the category "Other Costs." R23–236, Itemized Schedule at 7. Itemized entries reveal claims for mediation, discovery expenses, and unspecified paralegal services. Section 1920 provides no basis for any of these claims, nor do any of the cases cited by WorldCo support them. Further, WorldCo has suggested no alternative statutory basis.

Thus, it appears that roughly $120,000 of the expenses taxed by the clerk against Corwin were not within the discretion of the district court to tax. Looking beyond the untimeliness and lack of excusable neglect to the merits of the cost issue, we conclude that the district court abused its discretion in taxing these $120,000 in costs.

---

**15.** Although the district court adopted the report and recommendation regarding costs and attorneys fees on 9 May 2005, Corwin did not file his motion for leave or his objection to taxation of costs until 19 May.

### III. CONCLUSION

Corwin appeals the district court's grant of summary judgment in favor of Disney, the underlying evidentiary rulings, and an order taxing costs. First, because, upon *de novo* review, we conclude that Corwin has failed to raise a genuine issue of material fact as to access or striking similarity, we AFFIRM as to summary judgment. Because the district court awarded costs it had no discretion to award, we VACATE the order on costs, and REMAND for proceedings consistent with this opinion.